TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00128-CV







Fred Phillips and Yolanda Lopez, Appellants



v.



Texas Department of Protective and Regulatory Services, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 95-04345-A, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 The Texas Department of Protective and Regulatory Services (the Department) sued
to terminate the parental rights of appellants Yolanda Lopez and Fred Phillips. The trial court
terminated Lopez's parental rights with her four youngest children, finding that (1) she knowingly
placed or allowed the children to be placed in conditions that endangered their physical or
emotional well-being; (2) she engaged in conduct or knowingly placed the children with persons
who engaged in conduct that endangered the physical or emotional well-being of the children; and
(3) termination is in the best interest of the children. See Tex. Fam. Code Ann. § 161.001(1)(D),
(1)(E), (2) (West Supp. 2000). The trial court also terminated the parental rights of Phillips, the
alleged biological father of one of Lopez's daughters, finding as an additional ground that he 
failed to support his child for a period of one year ending within six months of the date of filing
the petition. See id. § 161.001(1)(F) (West Supp. 2000). Both parents appeal the termination of
their rights. Lopez claims the evidence is factually insufficient to support the trial court's findings
and that termination is not in the best interest of the children. Phillips asserts legal and factual
sufficiency challenges, and further claims that since his biological daughter already had a
presumed father, Phillips had no parental rights for the Department to terminate. We will affirm
the trial court's judgment terminating the parental rights of both Phillips and Lopez.


FACTUAL AND PROCEDURAL BACKGROUND

 Yolanda Lopez is the mother of nine children. (1) The youngest four (2) (V.C.L., 12;
R.L., 11; V.D.L., 7; and V.E.L., 6) are the subjects of this appeal. (3) The Department first
became involved with the family in October 1991 when V.A.L., the eldest daughter, made an
outcry of sexual abuse against her father, Richard Lopez. The outcry was substantiated, and
Richard Lopez was ultimately convicted on charges relating to his daughter's claims. He was also
suspected of sexually abusing his other daughters and of physically abusing his wife and all of the
children. Following his conviction, Yolanda Lopez filed for but never finalized a divorce. 
However, Richard Lopez has apparently not been significantly involved with the family for a
number of years. Since all the children were born during the marriage of Richard and Yolanda
Lopez, Richard Lopez is the presumed father of all the children who are the subject of this suit. 
See Tex. Fam. Code Ann. § 151.002(a)(1) (West Supp. 2000).

 In 1989, during a period of estrangement from her husband, Yolanda Lopez
commenced a relationship with Fred Phillips, who was her neighbor. In what Phillips
characterizes as a planned pregnancy, Lopez (4) became pregnant with V.D.L. Before V.D.L. was
born, Richard Lopez returned to the family and nominally held V.D.L. out as his own child. 
However, V.D.L.'s skin was visibly lighter than that of her siblings, (5) a fact that did not escape
Richard Lopez's notice, and he openly questioned V.D.L.'s paternity. It was apparently common
knowledge among family and friends that V.D.L. had a different father than her siblings; V.D.L.
even referred to Phillips on occasion as "daddy." Testimony was conflicting, but at least by the
time V.D.L. was three years old, Phillips was certain that V.D.L. was his child. He never lived
with V.D.L., and aside from helping Lopez with household repairs, Phillips contributed little to
the support of his child.

 Living with their mother, the children went largely unsupervised and were allowed
to set their own rules. This resulted in a chaotic home environment that concerned officials who
encountered the family. The caseworker who worked with the family during 1991 and 1992, after
V.A.L.'s sexual abuse outcry, observed severe emotional problems in the children and urged that
they receive counseling. The caseworker was also concerned by unsanitary conditions in the
home and felt the children's health was threatened; the children suffered chronic outbreaks of hair
lice, they were often disheveled and dirty, and V.C.L. sometimes smelled of urine. The
caseworker was also concerned because the children's school attendance was spotty and the older
children were prone toward gang and criminal activities. Those who worked with the family felt
Lopez inadequately supervised her children and would not make them do things they resisted. She
preferred to act more as a peer than a parent.

 The Department arranged for a battery of services for the family between 1991 and
1992, but in spite of initial showings of enthusiasm, Lopez displayed a consistent inability to
follow through on any goals that were set. When Lopez showed interest in becoming employed,
the Department arranged for free child care within walking distance of the home. But the children
were never enrolled, and Lopez did not look for work. When Lopez indicated that transportation
problems made it difficult to get the children to their counseling appointments, the Department
arranged for transportation. But the children were frequently not at home when their ride arrived,
and their attendance did not improve. Concerned with the run-down condition of the home, the
Department tried to help arrange for more suitable housing. But Lopez never followed through
on making the necessary contacts. The Department finally closed the case because it felt that,
given Lopez's lack of cooperation, further services would be of limited utility.

 In 1995, the Department reentered Lopez's life and found that little had changed. 
The children were chronically unsupervised, the home was unsanitary, and the children were not
attending school with any regularity. Manor Police Chief Robert Snyder testified that there were
some forty written reports of contacts with the Lopez family since 1994 and that, over and above
the written reports, his officers visited the family almost daily to investigate a variety of
complaints, including family disturbances, fighting, truancy, and reports of minors using alcohol
or drugs. He also testified that the house was filthy--it looked as though the children had
vandalized their own home--and smelled of urine. Social worker Linda Scott concurred, testifying
that the house was infested with roaches, rats, and lice. Roaches were seen nesting in the
refrigerator, eating off of uncovered plates of food stored there. The house was constantly strewn
with clothes, plates of uneaten food, and other debris. The bathroom was so dirty as to be
unusable, and the children were not bathing regularly and often smelled bad. She also observed
that the children were often clad in ill-fitting clothes or clothes that were inappropriate for the
season, and that their nutritional needs were not met by the meals provided by Lopez.

 Again, the Department's proffered services went largely unused. The social
workers, therapists, and caseworkers who worked with Lopez and her children all remarked
Lopez was friendly and helpful and initially seemed to want to improve her family's situation, but
then she always failed to follow through with any of her stated goals. Lopez made very little
progress towards stabilizing her home and becoming a better parent.

 Dr. David Poole, who performed a psychological profile of Lopez, testified that
Lopez was a very passive person who has difficulty anticipating and solving problems. He also
testified that V.C.L., V.D.L., and V.E.L. shared their mother's qualities of passivity and
dependency. Other psychologists and counselors concurred that the children suffer a variety of
problems as a result of inadequate parenting. V.E.L. and V.D.L. both had problems socializing
and demonstrated wild mood swings. Before being removed from her mother's care, V.E.L.,
then approximately five years old, wet and soiled herself when stressed. V.D.L., then
approximately six, frequently masturbated. V.C.L., who was eleven, was defiant, refused to
follow rules, and had great difficulty in school. R.L., ten, also wet and soiled himself and had
violent outbursts. When the Department took custody of him, he was placed in a residential
treatment center and was unable to attend regular school. Testimony from the psychologists and
counselors indicates that the behavioral, developmental, and physical problems of the children are
primarily attributable to the chaotic environment in Lopez's home.

 After determining that reunification of the family was not a feasible goal, a trial
date was set, and the Department sought termination of Richard and Yolanda Lopez's parental
rights. The Department also sought to terminate the rights of Phillips, who was named alleged
biological father of V.D.L. At trial in June 1997, the parental rights of all three parties were
terminated pursuant to section 161.001 of the Family Code. Richard Lopez, who was served by
publication and did not personally appear at trial, does not appeal the termination of his rights. 
Both Yolanda Lopez and Phillips challenge the termination.


DISCUSSION

Termination of the Mother's Rights

 A court may terminate a parent's rights to her children if it finds by clear and
convincing evidence that the parent has engaged in one of the listed kinds of conduct in section
161.001(1) of the Family Code and that the termination is in the best interest of the child. See
Tex. Fam. Code Ann. § 161.001. At trial in a termination case, the Department is held to a clear
and convincing standard of proof, which has been defined as "that measure or degree of proof
which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established." In re G.M., 596 S.W.2d 846, 847 (Tex. 1980).

 Lopez raises three factual sufficiency points on appeal. When reviewing the factual
sufficiency of the evidence, we consider and weigh all evidence, including the evidence contrary
to the judgment, and will set aside the judgment only if the evidence is so contrary to the weight
of the evidence as to be clearly wrong and unjust. See Leal v. Texas Dep't of Protective &
Regulatory Servs., No. 03-98-516-CV, slip op. at (Tex. App.--Austin July 27, 2000, no pet.).

 The final termination decree included two grounds for terminating Lopez's parental
rights. In her first issue on appeal, Lopez urges that the Department failed to meet its burden of
proof to establish that she engaged in conduct and knowingly placed her children with persons
who engaged in conduct that endangered the physical or emotional well-being of the children. See
Tex. Fam. Code Ann. § 161.001(1)(E). More specifically, though she does not dispute that her
parenting skills are lacking and that her children have suffered as a result, Lopez argues that there
is insufficient evidence to support termination because her shortcomings were due to factors
beyond her control. She attributes her family's problems primarily to poverty and her inability
to adequately cope with the task of raising nine children alone.

 Lopez relies on two cases in support of her argument. Termination of a mother's
parental rights was overturned in In re R.E.W., where the court held that "termination is not
justified where the evidence shows that a parent's failure to provide a desirable degree of care and
support of the child is due solely to lack of intelligence, training, or misfortune." 545 S.W.2d
573, 582 (Tex. Civ. App.--Houston [1st Dist.] 1976, writ ref'd n.r.e.). In that case, the child was
malnourished, poorly socialized, and emotionally disturbed. See id. at 576-78. The household
was roach-infested and filthy, and the mother was inconsistent in cooperating with the caseworker
and social workers. See id. However, the mother also suffered from physical and emotional
problems that prevented her from working and from keeping her home clean. See id. at 582. The
court attributed the mother's parenting problems to these disabilities and noted that the mother
made an effort to conform to the requirements of the caseworker and had made some progress
working with supporting agencies. See id. Lopez, however, has not claimed similar physical or
emotional impairments, and voluminous testimony shows she has not made a meaningful effort
to conform to the requirements of the Department.

 Lopez also refers us to Clay v. Texas Department of Human Resources, 748
S.W.2d 598 (Tex. App.--Waco 1988, no writ), another case where the termination of a mother's
parental rights was overturned. In that case, an abusive husband made it difficult for the mother
to meet her children's needs. See id. at 600. The mother finally sought help from the
Department, saying that she and the children were not safe in her husband's presence. See id. 
The Department sought termination because, even though she had never physically abused the
children herself, the mother had allowed her children to remain with her husband. See id. The
court of appeals overturned the termination, holding that the mother posed no danger to her
children, and any danger had come from the now-absent father. See id. at 601. The court further
noted that the mother had made every effort to comply with the court's orders and Department's
requirements. See id. Here, Lopez has not made comparable efforts to comply with Department
and court requests. Further, it cannot be said that the only threat to her children came from
Richard Lopez, who is no longer a member of the household. Even in his absence, there was
ample evidence introduced at trial demonstrating that the conduct of Yolanda Lopez endangered
the emotional and physical well-being of her children.

 While there is some evidence that poverty, lack of transportation, and Lopez's own
emotional problems increased the challenge of rearing nine children, there is substantial evidence
indicating that Lopez's inability to adequately care for her children was not due solely to her lack
of intelligence or training, nor to general misfortune. At trial, the Department adduced evidence
that all of the children have emotional problems, and yet their mother failed to make sure they
consistently attended counseling, even when the counseling sessions and transportation were
provided by the Department at no charge. The children also suffered physical problems while
under their mother's care; they endured chronic bouts of hair lice, the boys were dirty and
disheveled, and V.C.L. went to school smelling of urine, even though the family was provided
with clothing, housecleaning supplies, and lice shampoos that should have alleviated the problems. 
Though she had adequate financial assistance to feed her family, Lopez failed to provide her
children with nutritious or sanitary food. She also never ensured that her children attended school
regularly, and as a result all of the children were lagging academically and were in danger of
failing their current grade levels.

 In light of the wide range of services offered by the Department to alleviate the
Lopez family's problems, Lopez's claim that her shortcomings were due to a "lack of intelligence,
training, or misfortune" rings hollow. And while it is true that Lopez herself never actively
abused her children, it was her failure to act that endangered her children. Physical abuse is not
required where a parent's omission--her neglect--has endangered the children. See In re S.H.A.,
728 S.W.2d 73, 85 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). Based on the foregoing, we hold
that the evidence adduced at trial was factually sufficient to prove by clear and convincing
evidence that Lopez had engaged in conduct that endangered the physical or emotional well-being
of her children. See Tex. Fam. Code Ann. § 161.001(1)(E). Lopez's first issue on appeal is
overruled.

 In her second issue, Lopez urges that the Department failed to meet its burden of
proof to establish that she knowingly placed or knowingly allowed her children to remain in
conditions or surroundings that endangered the physical or emotional well-being of the children. 
See id. § 161.001(1)(D). She reiterates that problems with the home environment were due to
poverty, lack of intelligence, and other circumstances beyond her control. She also argues that
the State did not prove the required connection between the home conditions and the resulting
danger to the children's emotional or physical well-being. See Ybarra v. Texas Dep't of Human
Servs., 869 S.W.2d 574, 577-78 (Tex. App.--Corpus Christi 1993, no writ); In re S.H.A., 728
S.W.2d at 85.

 For $50 a month, Lopez rented a former crack house that was infested with
roaches, fleas, and rodents, a home so filthy the police chief thought it looked as though the "kids
had vandalized their own home." There were holes in the walls and graffiti painted in the
residence. The refrigerator did not keep food cold, and roaches were seen nesting in the egg
holders on the door and eating the uncovered food stored in the refrigerator. The rest of the house
was strewn with plates of food, clothes, and other debris. Lopez's assertion that the condition of
her house was due to forces beyond her control does not absolve her of all responsibility for her
failures. In fact, great efforts were made to alleviate the conditions in the home, but without the
cooperation of Lopez in maintaining the home and supervising her children, these efforts had little
impact.

 A social worker testified that she brought roach spray, lice shampoo, hygiene
materials, soap, detergent, and household cleaning supplies with her nearly every time she visited
the family between July 1995 and March 1996, but she never saw any evidence that these products
were used. The toilet and bathtub in the bathroom remained so corroded as to be unusable, and
the children were not bathing regularly. Reports came from the police chief (who visited the
home with regularity) and other sources that the children and their home smelled of urine. The
children were apparently constantly infested with hair lice, even though the problem can usually
be easily remedied. Since the mother did not use the lice shampoos provided and would not cut
the girls' long hair to make it easier to get rid of lice eggs, the problem never abated, and the
children were often sent home from school as a result. In spite of nutritional counseling provided
by the social worker, the children were not fed nutritious meals, and sanitation in the kitchen did
not improve. The State introduced ample evidence that the physical well-being of the children was
endangered by this home environment.

 Furthermore, there was sufficient evidence introduced to show that the emotional
well-being of the children was endangered by the home environment. Several witnesses testified
that the children seemed to set their own rules, and that the lack of clear boundaries set by Lopez
has caused a wide range of emotional problems in the children. Dr. Sandy Andrews, a therapist
who evaluated V.C.L., V.D.L., and V.E.L. in 1996, attributed many of their emotional problems
to instability in the household. The evaluations indicated neglect of food and clothing in the
home, and that the girls did not feel safe in their mother's home; they were hyper-vigilant,
meaning they feared harm surrounding them or coming from some unknown direction. Similarly,
a 1991 evaluation of R.L. conducted by a school psychologist determined that he came from a
chaotic home environment and that he was an extremely troubled child, sometimes suicidal; his
teachers indicated to the psychologist that R.L. felt he was at the mercy of an "abusing and
rejecting" environment. By the time of trial, R.L. was living and being schooled at a residential
treatment center; because of his poor behavior and violent outbursts, he was unable to attend a
regular school, but his behavior was improving after being removed from his mother's care.

 Lopez does not dispute that her home was inadequate or that her children suffered
the emotional and physical problems listed above. Rather, she claims that because of her poverty
and personal limitations, she was unable to do any better for her children. Given the resources
offered by the Department and Lopez's refusal to take advantage of them, we cannot agree that
Lopez's failures were due purely to circumstances beyond her control. Lack of supervision, not
poverty, was the main problem in the Lopez home. Additionally, the Department has adequately
linked the home conditions the children lived in with the emotional and physical endangerment
they suffered. We agree with the trial court that the Department proved by clear and convincing
evidence that Lopez knowingly placed or knowingly allowed her children to remain in conditions
or surroundings which endangered their physical or emotional well-being. See Tex. Fam. Code
Ann. § 161.001(1)(D). Lopez's second issue on appeal is overruled.

 In her final issue on appeal, Lopez argues that the evidence did not establish by
clear and convincing proof that termination was in the best interest of the children. See id.
§ 161.001(2). In support of her contention, she refers to the testimony of several witnesses, as
well as the children themselves, that the children loved their mother and desired to be reunited
with her. The State does not deny that termination is against the children's wishes. However,
the wishes of the children are only one factor for the court to consider in determining their best
interest. Other factors the court may consider include (1) the present and future emotional and
physical needs of the children, (2) the present and future emotional and physical danger to the
children, (3) the parental abilities of the party seeking custody, (4) the stability of the proposed
home, (5) the acts or omissions of the parent that may indicate that the existing parent-child
relationship is inappropriate, and (6) any excuse the parent offers for those acts or omissions. See
Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). The court is not required to consider all of
the listed factors and may consider additional factors as well. See id.

 As discussed above, the evidence at trial was factually sufficient to establish that
Lopez's conduct and her home environment endangered both the physical and emotional well-being of her children. These same factors mitigate in favor of the trial court's finding that
termination would be in the best interest of the children. Lopez offers no references to the record
to contradict this finding, relying solely on the wishes of the children to support this point of
error. What children want, however, is not always in their best interests. We hold that the desire
of the children to stay with their mother does not outweigh the other evidence that their home life
was chaotic, that their emotional and physical well-being was threatened, and that their mother
was unwilling to improve as a parent. Therefore we conclude that the trial court did not err in
finding that termination is in the children's best interests, and we overrule Lopez's third issue.


Termination of the Biological Father's Rights

 In its lawsuit against V.D.L.'s parents, the Department named Richard Lopez
presumed father and Phillips as V.D.L.'s "alleged biological father." See Tex. Fam. Code Ann.
§§ 151.002(a)(1), 161.002 (West Supp. 2000). The trial court terminated the parental rights of
both men. Phillips appeals, claiming in his first issue that he is a putative father, not an alleged
father, and that as a putative father he had no rights in or duties toward his child prior to a judicial
declaration of his paternity. Therefore, he argues that he had no parental rights regarding V.D.L.
for the trial court to terminate.

 If this were a suit seeking to establish V.D.L.'s parentage, Phillips would have
standing as a putative father (that is, a man claiming to be a child's biological father) to challenge
the presumption that Richard Lopez is V.D.L.'s biological father. See id. § 160.101(a)(4) (West
Supp. 2000). (6) However, the present case is not a suit to establish parentage under chapter 160,
but rather is a suit to terminate parental rights under chapter 161. The termination scheme does
not distinguish a putative father from an alleged father, and Phillips comes squarely within the
provision covering alleged biological fathers. Phillips claims the status of putative father on the
strength of an admission of paternity he filed shortly before trial, in which he acknowledged that
he is V.D.L.'s biological father. (7) His belief that he can insulate himself from termination merely
by acknowledging paternity midway through the termination proceedings misconstrues the
relationship between sections 161.002 ("Termination of the Rights of an Alleged Biological
Father") and 161.001 ("Involuntary Termination of Parent-Child Relationship").

 Section 161.002 provides as follows:


(a) The procedural and substantive standards for termination of parental rights
apply to the termination of the rights of an alleged biological father.


(b) The rights of an alleged biological father may be terminated if:


 (1) After being served with citation, he does not respond by timely filing an
admission of paternity or a counterclaim for paternity under Chapter 160
prior to the final hearing in the suit . . . .

Id. § 161.002. (8) Subsection (b)(1) allows the Department to summarily terminate the rights of an
alleged biological father who does not assert his paternity. If, as here, the father does file an
admission of paternity or otherwise claims paternity, then subsection (a) allows the alleged
biological father to stave off summary termination of his rights and requires the Department to
meet the high burden of proof found in section 161.001. The admission of paternity does not, as
Phillips suggests, alter his status as an alleged biological father and confer on him the extra-statutory status of putative father. Rather, it merely gives him the right to proceed to trial and
require the state to prove by clear and convincing evidence that he engaged in one of the types of
conduct listed in section 161.001(1) and that termination is in the best interest of his child.

 Further, nothing in chapter 161 suggests that the rights of an alleged biological
father cannot be terminated if the subject child also has a presumed father. Theoretically, if a
married woman were to name several different men as the potential father of her child, the
Department could include the presumed father (the husband) and all the other alleged biological
fathers in one suit and seek to terminate the parental rights, if any, of each according to sections
161.001 and 161.002. Section 161.002 does not require a definitive biological determination of
paternity before an alleged biological father's rights can be terminated. The statutory scheme
anticipates that there can be more than one candidate for paternity and allows the court to
terminate, in the same proceeding, whatever parental rights they may have. If an alleged
biological father such as Phillips wishes to acknowledge the paternity of his child, he should also
have to defend himself against allegations that his child has been abused or neglected. He cannot
swear to be the biological father but claim to be immune from termination.

 Having determined that, as an alleged biological father, Phillips was properly
subject to a suit for termination, we turn to his second issue on appeal. Phillips argues that the
evidence against him was legally and factually insufficient to support the termination of his
parental rights.

 The trial court's final decree listed three grounds for the termination of Phillips's
parental rights. He was found to have (1) knowingly placed or allowed his child to remain in
conditions or surroundings which endangered her physical or emotional well-being; (2) engaged
in conduct or knowingly placed his child with persons who engaged in conduct that endangered
her physical or emotional well being; and (3) failed to support his child in accordance with his
ability during a period of one year ending within six months of the date of the filing of the
petition. See id. § 161.001(1)(D), (E), (F). The court also found that termination was in the best
interests of his child. See id. § 161.001(2). 

 We will first consider the "failure to support" ground for termination. To counter
the allegation that he did not support V.D.L. in accordance with his abilities, Phillips argues that
the failure to support financially is irrelevant where there has been no finding of paternity. This
argument fails for the same reason his first issue on appeal is unsuccessful; the termination statutes
do not require a determination of biological paternity before an alleged biological father's rights
can be terminated. If Phillips wants to assert his paternity, he must also be prepared to defend
himself against the Department's allegation that he has not supported the daughter he claims is his.

 In considering a "no evidence" or "legal sufficiency" point of error, we examine
only the evidence and inferences tending to support the finding and disregard all evidence and
inferences to the contrary. See Dupree, 907 S.W.2d at 83. To elicit evidence supporting the
allegation that Phillips failed to support V.D.L. in accordance with his ability during a period of
one year ending within six months of the date of the filing of the petition, the Department called
Phillips as a witness. He testified that for the first seven years of V.D.L.'s life he lived on
approximately $1000 a year while donating some 90% of his time to Christian volunteer work. 
At the time of trial, Phillips had a job earning approximately $150 a day, and he admitted that he
had been capable of earning similar sums of money since V.D.L.'s birth. He also testified that
he and Lopez planned to have this child together, and, in spite of some initial doubts, he has
known for certain that V.D.L. is his child since she was three years old. Because Phillips's own
testimony established that he could have earned enough money to meaningfully contribute to the
support of his daughter and had not done so, we conclude that the record contains legally
sufficient evidence on this ground for termination. We overrule Phillips's legal sufficiency
challenge.

 The standard of review for factual sufficiency challenges to termination of parental
rights was established above in the discussion on the termination of Lopez's rights. Briefly, the
judgment will be set aside only if the evidence supporting it is so contrary to the overwhelming
weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear
and convincing, so that the resulting judgment is clearly wrong and unjust. See In re L.R.M., 763
S.W.2d at 67; Dupree, 907 S.W.2d at 83.

 At trial, Phillips pointed to repairs he helped make to the Lopez home as evidence
that he contributed to V.D.L.'s support and also claimed that he made occasional gifts of money
to help the family. Lopez denied that Phillips gave money to support V.D.L. but did agree that
he helped her with repairs. However, given the cumulative testimony regarding the state of filth
and disrepair in the home, it appears that the repairs did little to improve the home condition while
the children were living with their mother. Further, occasional gifts are insufficient to fulfill a
parent's obligation to support his child. See Spangler v. Texas Dep't of Protective & Regulatory
Servs., 962 S.W.2d 253, 260 (Tex. App.--Waco 1998, no pet.). In light of the testimony that
Phillips could have, yet did not, earn money to contribute to the support of his daughter, we
cannot agree that the trial court's determination that Phillips failed to support V.D.L. within his
abilities was so contrary to the overwhelming weight of contradicting evidence that no trier of fact
could reasonably find the evidence to be clear and convincing.

 Having found sufficient evidence in the record to support one of the grounds for
termination, we need not consider the other grounds contained in the final decree. (9) We next
consider whether the evidence is factually and legally sufficient to support the trial court's finding
that termination is in the child's best interests.

 Phillips testified that he lived in a small home across the street from Lopez, where
he generated his own light, electricity, and water. The police chief described the home as an
uninhabitable shanty, and by Phillips's own admission his home had been burglarized and
vandalized over fifty times in six months. (Apparently, the vandals were often the older Lopez
children.) Phillips agreed that his home was not an appropriate one for V.D.L., but suggested
that if he gained custody of his daughter she could live with friends until he obtained suitable
housing.

 Other testimony indicated that Phillips tested positive for marihuana use, which he
attributed to eating "a bad batch of fudge." He was also suspected of providing alcohol for some
of the underage Lopez children, and the exterior of his home was littered with bottles and cans,
indicating that Phillips himself was consuming large quantities of alcohol.

 Dr. Poole testified that he had evaluated Phillips and concluded that, though
Phillips is well-intentioned, he has schizoid personality traits that would make it difficult for him
to relate to his daughter as she grew up. Phillips tends to pick "God awful people to have
relationships with" and generally has difficulty managing interpersonal relationships. Poole also
stated that, given the emotional problems V.D.L. has as a result of the environment she has grown
up in, and given Phillips's own schizoid personality disorder, he doubted that Phillips would be
able to function as a primary emotional parent to V.D.L.

 Among the Holley v. Adams factors, when determining whether termination is in
the best interest of the child, the trial court may consider the parental abilities of the parent
seeking custody, the emotional and physical needs of the child now and in the future, and the
stability of the home or proposed placement. See 544 S.W.2d at 372. In light of these
considerations, we hold that the evidence adduced at trial is factually and legally sufficient to
support a finding that termination of Phillips's parental rights was in V.D.L.'s best interest. 
Phillips's second issue on appeal is overruled.


CONCLUSION

 In sum, we hold that the evidence was factually sufficient to establish that Lopez
engaged in conduct that endangered her children and that her children lived in conditions that
endangered them. Likewise, the evidence was legally and factually sufficient to support the
termination of Phillips's rights for failing to support his biological daughter. The Department also
established that terminating the rights of both parents was in the best interests of the children. We
therefore affirm the judgment of the trial court.



 
 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: July 27, 2000

Publish

1. The three eldest children were over the age of eighteen and so were not a part of this
lawsuit. The Department received permanent managing conservatorship of V.B.L., 16½, who
was residing with her two children in a home for teen-aged mothers at the time of trial. It is not
clear from the record whether O.L., 15½, was nonsuited from the case or if the Department was
granted permanent managing conservatorship of him; at the time of trial O.L. was in custody at
Gardner-Betts Juvenile Justice Center awaiting a disposition hearing in juvenile court.
2. All ages reflect the age of the children at the time of trial.
3. Because all of the Lopez daughters have the initials V.L., and because the record does
not reflect their middle names, we have assigned middle initials to the girls alphabetically to
distinguish among them. The oldest daughter's name is represented by the initials V.A.L., the
next-oldest is V.B.L., and so on.
4. All mentions of "Lopez" refer to Yolanda Lopez. Richard Lopez will be identified by
his full name.
5. The record indicates that Yolanda and Richard Lopez are both Hispanic, while Phillips
is Caucasian.
6. This right did not exist until 1994, when the Texas Supreme Court held unconstitutional
a statutory scheme that prevented a putative father from asserting parental rights in a child who
has a presumed father. See In re J.W.T., 872 S.W.2d 189, 198 (Tex. 1994). Phillips seems to
rely on a line of pre-J.W.T. cases for his assertion that a putative father has no rights in his child
prior to a judicial determination of paternity.
7. The record filed with this Court was incomplete and did not contain this admission. 
However, neither party seems to dispute the content of the admission of paternity, so we will
assume that it contained a straightforward assertion of Phillips's paternity of V.D.L.
8. Since this lawsuit was filed, section 161.002(b) has been amended to include provisions
to terminate the rights of alleged biological fathers who have not registered with the paternity
registry or who have registered but cannot be presently located. The portions of section
161.002(b) applicable to this suit are substantively unchanged by the amendment, so we will cite
to the current statute.
9. It is worth noting, however, that were we to reach this issue, we could easily dispose
of Phillips's assertion that an alleged or putative father cannot be held responsible for a child's
physical and mental well-being prior to acknowledgment of paternity or actual rendition of a
paternity order. As one of the grounds for termination, Phillips was found to have "engaged in
conduct . . . which endangers the physical or emotional well-being of the child." See Tex. Fam.
Code Ann. § 161.001(1)(E) (West Supp. 2000). Several courts have expressly held that a father's
conduct prior to the establishment of his paternity can be considered under this section. See In
re M.D.S., 1 S.W.3d 190, 198 (Tex. App.--Amarillo 1999, no pet.) (citing Clark v. Clark, 705
S.W.2d 218, 219 (Tex. App.--Dallas 1985, writ dism'd); Allred v. Harris County Child Welfare
Unit, 615 S.W.2d 803, 806 (Tex. Civ. App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.)).


at termination of Phillips's parental rights was in V.D.L.'s best interest. 
Phillips's second issue on