No. 04-01-00295-CV



IN THE INTEREST OF M.A.N.M., a Child



From the 166th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-PA-00442


Honorable David Peeples, Judge Presiding



Opinion by: Karen Angelini, Justice

Dissenting Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

 

Delivered and Filed: February 6, 2002


AFFIRMED

 The trial court terminated John Ramirez's parental rights to M.A.N.M. Ramirez appeals the
judgment in three issues. We affirm the trial court's judgment.

Factual and Procedural Background

 Anthony Medina and Tammy Sells were married at the time of trial. When they married, Sells
was pregnant; Medina, however, is not the biological father of the child. John Ramirez is the child's
biological father. M.A.N.M. was born in January of 1999 with cocaine in her system. Medina knew
Sells was using drugs and drinking heavily, at times, during her pregnancy. Child Protective Services
intervened and implemented a safety plan, allowing Medina and Sells to reside with M.A.N.M. at
Medina's mother's home. Approximately one month after M.A.N.M.'s birth, Sells moved out of
Medina's mother's home. Sells' parental rights to M.A.N.M. were later terminated. M.A.N.M.,
however, remained with Medina at his mother's home. The child refers to Medina as "Dada" and to
Medina's mother as "Mamau." At the time of trial, Medina had applied for insurance for M.A.N.M.
and, while he and his mother are at work, M.A.N.M. is in daycare. Medina's mother believes it is in
M.A.N.M.'s best interests to terminate Ramirez's parental rights and allow the child to remain with
the "only family that she knows, the family that's been there from the very beginning." Medina also
believed it was in M.A.N.M.'s best interests for Ramirez's parental rights to be terminated.

 Before M.A.N.M.'s birth, Ramirez provided some financial support to Sells, with the
understanding that the money was for the unborn child. Ramirez was employed "off and on" and
earned eight dollars an hour. After M.A.N.M. was born, Ramirez offered to pay Medina money,
conditioned on being able to see the child. Ramirez, however, did not provide any support to Medina.

 Ramirez contacted C.P.S. on February 5, 1999, and again on March 27, 1999, expressing his
intent to pursue his legal rights as M.A.N.M.'s father and leaving a number where he could be
contacted. C.P.S. did not consider Ramirez as a "participating family member" because Sells was
married to Medina at the time of M.A.N.M.'s birth. C.P.S. advised him to seek legal assistance to
establish paternity. Until he did so, Ramirez had no right to visit the child, absent cooperation from
Sells. 

 Because Ramirez did not have the financial ability to hire an attorney, he sought the assistance
of Legal Aid. Legal Aid referred him to the Attorney General's Office. Because Ramirez did not have
M.A.N.M.'s name or social security number, the Attorney General was unable to provide him with
assistance. Ramirez then hired his own attorney. 

 Ramirez was made aware of the petition to terminate his parental rights in May of 2000. The
parties agreed to a paternity test, which identified him as M.A.N.M.'s biological father. Ramirez also
agreed to submit to a drug test. Ramirez tested positive for cocaine and marijuana use. Ramirez first
started to use drugs recreationally as a teenager. Occasionally, Ramirez bought drugs. Ramirez
admitted that he spent at least $2,000 on drugs during the two years preceding trial and that he could
have used that money to hire a lawyer to assist him in protecting his rights as M.A.N.M.'s biological
father. Within the month before trial, Ramirez began attending Narcotics Anonymous meetings twice
a week. He plans to continue attending the meetings. Ramirez's parents have expressed an interest
in helping him recover from his addiction. Ramirez admitted that he should have stopped using drugs
once he learned his child had been born dependent upon them. 

 Ramirez pays $200 in rent to live with his parents. He has lived with them his entire life. His
mother testified that Ramirez is capable of earning and saving money. At the time of trial, Ramirez
was working forty hours a week and earning ten dollars an hour. Ramirez's parents support him "100
percent" regarding obtaining custody of M.A.N.M. Ramirez testified he was ready to take on the
responsibility of a two-year-old child, particularly with the help of his family.

 Wendelyn Thornton, a Child Protective Services Program Administrator, testified about
M.A.N.M.'s family's history. She also testified that Sells had indicated to her that Ramirez was
abusive. Medina's mother also testified that Sells told her a restraining order was in place against
Ramirez because, during her pregnancy, Sells and Ramirez were involved in an altercation. Thornton
testified that it is very difficult for a child to form any significant attachment to a parent, when that
child has not been exposed to the parent during the child's first two years of life.

 Ramirez believes that he and his child have "a bond." According to Ramirez, M.A.N.M.
recognizes him and is, at times, loving to him. Ramirez agreed that he could work with Medina to
take care of M.A.N.M., but that, eventually, he intends to seek and gain full custody of the child.

 The ad litem also believes that a relationship has started between M.A.N.M. and Ramirez and
would like to see it continue. And, although he recognized that it would be difficult emotionally to
remove the child from Medina, termination of Ramirez's parental rights was not in her best interests.
The ad litem testified that he has seen Ramirez interact with M.A.N.M. According to the ad litem,
Ramirez interacted well with and was patient with the child. Medina's mother, however, testified that
although M.A.N.M. is somewhat more restrained than she normally is when she's with Ramirez, she
does not perceive Ramirez as a threat to the child.

 Based on the evidence adduced at trial, the trial court terminated Ramirez's parental rights.
Specifically, the court found based upon clear and convincing evidence that Ramirez "failed to
support the child in accordance with his ability during a period of one year ending within six months
of the date of the filing of this petition." The court also found termination was in M.A.N.M.'s best
interests. 

 Ramirez appeals the termination. He challenges the legal and factual sufficiency of the
evidence supporting the trial court's findings. He further maintains that the trial court abused its
discretion in denying his motion for new trial. 


Sufficiency of the Evidence


A. Standard of Review

 Involuntary termination of parental rights is a drastic remedy. In the Interest of G. M., 596
S.W.2d 846, 847 (Tex. 1980). Termination involves fundamental constitutional rights, and the
proceeding must be strictly scrutinized. Id. at 846. There is a strong presumption that the best
interests of a child are usually served by retaining custody in the natural parents, and the termination
of parental rights cannot be justified without the most solid and substantial reasons. Wiley v. Spratlan,
543 S.W.2d 349, 352 (Tex. 1976). However, the need for permanence is the paramount consideration
for the child's present and future physical and emotional needs. Dupree v. Texas Dep't of Protective
& Regulatory Servs., 907 S.W.2d 81, 87 (Tex. App.-Dallas 1995, no writ). The goal of establishing
a stable, permanent home for a child is a compelling government interest. Id.

 The Texas Family Code, in order to protect the relationship between a parent and child,
requires a showing by clear and convincing evidence that the parent in question behaved in some
manner that was detrimental to the child. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2001).
This intermediate standard colors our review of the factual sufficiency of the evidence in a termination
case. See In re B.T., 954 S.W.2d 44, 46 (Tex. App.-San Antonio 1997, writ denied). Applying this
standard to our review of a trial judge's findings, we review all of the record evidence and ask
whether sufficient evidence was presented to produce in the mind of a rational fact finder a "firm
belief or conviction as to the truth of the allegations sought to be established." Tex Fam. Code Ann.
§ 101.007 (Vernon Supp. 2001); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). The trial court's
judgment will be set aside only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Djeto v. Texas Dep't of Protective & Regulatory Servs.,
928 S.W.2d 96, 97 (Tex. App.-San Antonio 1996, no writ). 

 In deciding a legal sufficiency issue, we consider only the evidence tending to support the
finding and disregard all evidence to the contrary. Southwestern Bell Mobile Sys., Inc. v. Franco, 971
S.W.2d 52, 54 (Tex.1998); In re R.D., 955 S.W.2d 364, 368 (Tex. App.-San Antonio 1997, pet.
denied). If more than a scintilla of evidence supports the trial court's findings, the appealing parent
cannot prevail on a legal sufficiency point. In re R.D., 955 S.W.2d 

at 368.

B. Failure to Support

 The trial court found that Ramirez failed to support M.A.N.M. "in accordance with his ability
during a period of one year ending within six months of the date of this filing of this petition." Tex.
Fam. Code. Ann. § 161.001(1)(F) (Vernon Supp. 2001). To terminate parental rights on
non-support grounds, the evidence must establish that the parent failed to support the child for twelve
consecutive months and had the ability to contribute to the support of the child for twelve consecutive
months. In re D.L.B., 943 S.W.2d 175, 177 (Tex. App.-San Antonio 1997, no writ); In re Guillory,
618 S.W.2d 948, 951 (Tex. App.-Houston [1st Dist.] 1981, no writ). One court of appeals has found
there was legally and factually sufficient evidence of nonsupport, when the parent admitted that he
could have earned enough money to meaningfully contribute to his daughter's support, but did not. 
Phillips v. Texas Dep't of Protective and Regulatory Servs., 25 S.W.3d 348, 357-58 (Tex.
App.-Austin 2000, no pet.). 

 It is undisputed here that Ramirez did not provide support to M.A.N.M. Ramirez contends,
however, that Medina failed to meet his burden of proving that Ramirez had the ability to pay support
for twelve consecutive months. Ramirez relies on Jiminez, ex rel., Little v. Garza, 787 S.W.2d 601
(Tex. App.-El Paso 1990, no writ) for his assertion.

 In Jiminez, the appeals court reversed a termination based on nonsupport on legal sufficiency
grounds. Id. at 604. The father testified that, at first, he offered no money to support the child, but
that later he offered to give money for support. Id. at 603-04. The father further explained that once
he began visitation with the child, he provided the child with food, bedding, furniture, and toys. Id.
at 603. The evidence showed the father's annual income and monthly bills. The court held, in light
of the constitutional precautions involved in termination cases, that

 "[t]here is no firm evidence as to the amounts of salary paid for any given month of
the twelve month period to determine an ability to pay that particular month or to
establish a pattern over a series of months. There is money spent by the father, but
again without any reference to times or amounts." 


Id. 

 In this case, there is likewise no "firm" evidence of Ramirez's salary during the twelve month
period before trial. Ramirez testified that he was working "off and on" with temporary agencies and
that he never had full-time employment. He further testified that, at the time of trial, he was working
forty hours a week, earning ten dollars an hour. However, Ramirez testified that had Medina allowed
him visitation with the child, he would have provided support for her. Ramirez also admitted that he
spent a significant amount of money on drugs over the past two years. Further, Ramirez's mother
testified that he was able to earn and save money and had done so in the past. Essentially then,
Ramirez could have contributed to the support of his child, but did not. Phillips, 25 S.W.3d at 357-58.

 Viewing the evidence in a light favorable to the judgment, we hold there is legally sufficient
evidence to support the trial court's non-support finding. Furthermore, we hold factually sufficient
evidence was presented to produce in the mind of the trial judge a "firm belief or conviction" that
Ramirez had the ability to provide support to M.A.N.M. Ramirez's first issue is overruled. 


 Best Interests


 Ramirez also challenges the sufficiency of the evidence supporting the trial court's finding that
termination of the parent-child relationship was in his child's best interest. Accordingly, we examine
the evidence in light of the following factors: 

 (A) the desires of the child; (B) the emotional and physical needs of the child now and
in the future; (C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody; (E) the programs available
to assist these individuals to promote the best interest of the child; (F) the plans for
the child by these individuals or by the agency seeking custody; (G) the stability of the
home or proposed placement; (H) the acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one; and (I) any
excuse for the acts or omissions of the parent. 


Holley v. Adams, 544 S.W.2d 367, 371-372 (Tex. 1976); In re D.G., 5 S.W.3d 769, 772 (Tex.
App.-San Antonio 1999, no pet.).

 Quite often, the best interest of the child is infused with the statutory offensive
behavior. While there are instances where the offending behavior will demand
termination of parental rights, there are also those cases where the best interest
determination must have a firm basis in facts standing apart from the offending
behavior. Although such behavior may reasonably suggest that a child would be better
off with a new family, the best interest standard does not permit termination merely
because a child might be better off living elsewhere. 


In re D.M., B.W., and J.C.W., 58 S.W.3d 801, 814 (Tex. App.-Fort Worth 2001, no pet. h.). This
case is one where Ramirez's "offending behavior" is not egregious enough, on its own, to warrant
a finding that termination is in the child's best interests. Accordingly, we must look to other,
independent facts to support the trial court's best interests finding. 

 M.A.N.M. is two years old. She was born addicted to cocaine and is currently on medication.
Over the course of six visits, M.A.N.M. and Ramirez have developed a "bond," even though
M.A.N.M. appears more reserved than normal in Ramirez's presence. There was no evidence
presented that Ramirez would present any danger to M.A.N.M., now or in the future. In fact, the ad
litem testified that Ramirez interacted well with M.A.M.N and Medina's mother testified that she did
not perceive Ramirez to be a threat to the child. Medina and Ramirez are both young men, who live
with their parents. The parents of both men have attested that they are willing to help raise M.A.N.M.
We note, however, that M.A.N.M. has lived with Medina's family throughout her life. M.A.N.M.
attends daycare while Medina and his mother are at work. And, Medina plans to move out of his
mother's home in the future. The evidence shows that it is very difficult for a child to form any
significant attachment to a parent, when that child and the parent have had no relationship during the
child's first two years of life. No evidence was presented about possible programs to assist Ramirez.
Furthermore, there is no evidence that Medina has ever used drugs; Ramirez admits he used drugs
in the past and currently attends Narcotics Anonymous meetings.

 We hold the evidence is legally sufficient to support the trial court's finding that termination
of Ramirez's parental rights is in M.A.N.M.'s best interest. In addition, we hold the evidence is
factually sufficient to support the trial court's finding, particularly in light of the State's interest in
providing a child with a stable, permanent home. Ramirez's second issue is overruled.

Motion for New Trial

 In his third issue, Ramirez argues the trial judge abused its discretion in denying Ramirez's
motion for new trial in light of newly discovered evidence. The newly discovered evidence consists
of facts showing Medina attempted suicide a month before M.A.N.M.'s birth.




 Standard of Review


 A party seeking a new trial on the ground of newly discovered evidence must show that: 1)
the evidence came to his knowledge since the trial; 2) it was not owing to want of due diligence that
the evidence had not come to his attention sooner; 3) the evidence is not cumulative; and 4) the
evidence is so material that it would probably produce a different result if a new trial were granted.
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex.1983); In re J.M., 955 S.W.2d 405, 408 (Tex.
App.-San Antonio 1997, no pet.). Whether to grant or deny a motion for new trial lies within the
sound discretion of the trial court, and the court's decision will not be disturbed absent a clear abuse
of discretion. Jackson, 660 S.W.2d at 809; In re J.M., 955 S.W.2d at 408. When a trial court refuses
to grant a new trial based on newly discovered evidence, every reasonable presumption is to be made
in favor of the trial court's decision. Jackson, 660 S.W.2d at 809-10; In re J.M., 955 S.W.2d at 408.


 Application


 Ramirez testified, at the hearing on his motion for new trial, that following the trial he
received information that raised a concern about Medina's ability to care for M.A.N.M. Medina also
testified at the hearing. Medina and Sells, the child's mother, were married in December of 1998.
Their relationship ended in February of 1999. Approximately two months before Medina and Sells
broke up, Medina attempted to commit suicide. According to Medina, the reason he attempted
suicide was because he and Sells were having problems and he "couldn't deal with her." Medina went
to the hospital for treatment of his wounds, but did not seek psychological counseling. Medina has
not had any depressed feelings since then. He further testified that these events have in no way
affected his ability to care for M.A.N.M.

 It is undisputed that this evidence came to Ramirez's attention since the trial. Ramirez
contends that he could not have known about these facts before trial because he did not have any
relationship with Medina or his family. However, Ramirez would have been able to draw out these
facts from Medina in discovery. The record does not reflect that Ramirez sought through discovery
any information on Medina's medical and psychological history. And, Ramirez made no attempt at
trial to question Medina about any medical or psychological problems he may have experienced.
Ramirez has failed to make the requisite showing that the evidence did not come to his attention
sooner for lack of due diligence. Because Ramirez has not met the second requirement for granting
a new trial based on newly discovered evidence, we need not reach the remaining two factors.
Ramirez's third issue is overruled.

Conclusion

 The evidence is legally and factually sufficient to support the trial court's finding that Ramirez
failed to support M.A.N.M. for twelve consecutive months during the eighteen-month period
preceding the petition's filing. Furthermore, the evidence is legally and factually sufficient to support
the trial court's finding that termination of Ramirez's parental rights to M.A.N.M. is in her best
interests. Finally, the trial court did not abuse its discretion in denying Ramirez's motion for new trial
based on newly discovered evidence. Accordingly, we affirm the trial court's judgment. 


 Karen Angelini, Justice

PUBLISH