**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00194-CV**
_____

**IN THE INTEREST OF Z.L.**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CV1814010**

## MEMORANDUM OPINION

C.L. appeals the trial court's order terminating his parental rights to his child, Z.L. In two appellate issues, C.L. (1) alleges the termination of his parental rights was improper because "[t]here was no established parent-child relationship to terminate[,]" and (2) contends the trial court violated his right to due process by not allowing him a reasonable opportunity to participate in the trial. We affirm the trial court's judgment terminating C.L.'s parental rights.

### PERTINENT BACKGROUND

The Department of Family and Protective Services ("the Department") filed a petition seeking termination of C.L.'s rights to his son, Z.L. The Department's

1

petition alleged that C.L. was the alleged father of Z.L. and requested termination of the parent-child relationship. In addition, the Department pleaded that if C.L. "appears and is established as the father . . . , the Court should terminate the parent-child relationship[.]" The Sheriff's return attached to the citation showed that C.L. was personally served with process.

The Court Appointed Special Advocate ("CASA") report stated that "[t]he father is currently incarcerated in Liberty County for assault and family violence and additional criminal charges." The status hearing order of February 1, 2019, reflects that C.L. appeared at the status hearing through his attorney of record. The trial court ordered C.L. to submit to genetic testing. The record does not reflect that C.L. submitted to genetic testing or that the trial court signed an order that C.L. is the biological father of Z.L. At a hearing on January 4, 2019, C.L. appeared with counsel, and when the trial judge asked those present to identify themselves, C.L.'s attorney stated that he is the "attorney for the father[,]" and C.L. twice identified himself as "[C.L.], Father." At the same hearing, C.L.'s counsel stated that C.L. had reviewed the paperwork with counsel, and that C.L. agreed to the temporary managing conservatorship.

A report from the paternity registry certified that no intent to claim paternity of Z.L. had been filed. Paternity tests excluded two men, C.H. and B.G., as the biological father of Z.L. A CASA report of May 28, 2019, indicated as follows in

2

reference to C.L.: "The father listed on the birth certificate has not been confirmed by paternity[,]" but he was participating in supervised visitation. On September 23, 2019, C.L.'s attorney of record appeared at the permanency hearing and announced ready for trial. At this hearing, CPS caseworker Sharonda Easley testified that C.L. had been visiting Z.L., and Easley also stated in open court that C.L. has not appeared for genetic testing, and that C.L. "said he knows he's the father." C.L. signed a child caregiver resource form as Z.L.'s "parent or guardian" and named his niece as someone who might be able to care for Z.L. In addition, C.L. signed a temporary visitation schedule in a signature block labeled "Parent Signature[.]"

At the beginning of the trial, which was conducted via Zoom, the Department and the attorney ad litem announced ready, but counsel for C.L. orally requested a continuance due to lack of contact with his client and the Covid-19 pandemic, and counsel argued that trial by Zoom would not allow him to effectively communicate with C.L. The attorney ad litem argued, "the issues with the Zoom trial [weren't] brought up before today. Both parents have decided to absent themselves from contact with their attorneys or to this proceeding and frankly, Your Honor, my client deserves permanency[,] and I would ask that we please move forward today." The trial court discussed the possibility of mediation with the parties, and the foster parents informed the trial judge that both C.L. and Z.L.'s mother, M.P., stated that

3

they did not intend to come to court and testify again.[1] The attorney ad litem argued that the case had been pending for quite some time, and that although she sympathized with the parents' attorneys, "this child needs permanency. He needs to know where he's going to live for the rest of his life and not have to worry that he might be drug back in[to] court every time Mom and Dad get a wild idea."

The trial judge denied the oral motions for continuance, and the case proceeded to trial. The trial judge took judicial notice of the termination order it entered in trial cause number CV1813884 as to one of the parties' other children. During his opening statement and closing argument, C.L.'s counsel argued that C.L.'s parental rights should not be terminated. C.L.'s counsel also cross-examined witnesses and made numerous objections during trial. After the trial concluded, the trial judge signed an order terminating C.L.'s parental rights. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (M), (O).

## ISSUE ONE

In his first issue, C.L. argues that the trial court erred by terminating his parental rights because he was an alleged father of Z.L. but had not been determined to be a "parent" as defined by section 101.024 of the Family Code. *See* Tex. Fam.

---

[1]After previously conducting a trial in trial case number CV1813884, the trial court terminated the rights of C.L. and M.P. to another child. That case is also before this Court in appeal number 09-20-00195-CV. M.P. is not a party to this appeal regarding Z.L.

4

Code Ann. § 101.024 (defining "parent" as "a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive . . . father"). C.L. does not challenge the sufficiency of the evidence supporting the trial court's findings regarding the predicate acts or omissions or that termination is in Z.L.'s best interest. Rather, C.L. contends that he is not a parent whose rights are subject to termination because he was not formally adjudicated to be Z.L.'s biological father.

At the outset, we note that C.L. did not raise this argument in the trial court. *See* Tex. R. App. P. 33.1(a). However, for the reasons explained herein, he would not prevail even if he had properly preserved the issue for appellate review. The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *see In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The Department must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84.

Section 101.0015 of the Texas Family Code defines "alleged father" as "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." Tex. Fam. Code Ann. § 101.0015(a). Section 161.002(a) of the Texas Family Code, which deals specifically with termination of the rights of an alleged biological father, provides that "the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father." *Id*. § 161.002(a). Subsection (b) of section 161.002 provides that the rights of an alleged father may be terminated if, "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160[.]" *Id*. § 161.002(b)(1).

The provisions of section 161.001(1) of the Texas Family Code "also apply to an alleged father." *In the Interest of T.C.*, No. 04-09-00126-CV, 2010 WL 2298900, at *1 (Tex. App.—San Antonio June 9, 2010, no pet.) (mem. op.). If a father admits paternity, then section 161.002(a) allows the father "to stave off summary termination of his rights [under subsection (b)(1)] and requires the Department to meet the high burden of proof found in section 161.001." *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.). An admission of paternity does not alter a father's status as an alleged biological father; rather, it "merely gives him the right to proceed to trial and

6

require the state to prove by clear and convincing evidence that he engaged in one of the types of conduct listed in section 161.001(1) and that termination is in the best interest of his child." *Id.*

"There are no formalities that must be observed when filing an admission of paternity or for such an admission to be effective." *In the Interest of U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.). If an alleged biological father does not file a document with the court, he may nevertheless be found to have admitted paternity by appearing at trial, asserting that he was the child's father, and asking the trial court not to terminate his parental rights. *See Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet). In support of his argument, C.L. cites *In the Interest of J.E.*; however, that case is distinguishable because in *J.E.*, the trial court explicitly found that the alleged father was not the child's biological father. *See In the Interest of J.E.*, No. 04-19-00050-CV, 2019 WL 2110682, at *1-2 (Tex. App.—San Antonio May 15, 2019, no pet.) (mem. op.). Additionally, *J.E.* involved an allegation that the parent was a presumed father rather than an alleged father, and the Texas Family Code defines the terms differently. *Compare* Tex. Fam. Code Ann. § 101.0015 (defining "alleged father") *with* Tex. Fam. Code Ann. § 160.204(a) (defining circumstances under which a man is presumed to be a child's father).

As discussed above, C.L. signed documents in the trial court as Z.L.'s parent, his attorney identified himself as representing Z.L.'s father, and C.L. identified himself as Z.L.'s father in open court during a hearing, agreed to temporary managing conservatorship, and visited Z.L.. Easley stated in open court, without objection from C.L.'s counsel, that C.L. "said he knows he's the father." Additionally, this Court takes judicial notice that in the appeal before this Court regarding one of C.L.'s other children, C.L. testified that Z.L. is his child and he provides financial support for Z.L. *See Douglas v. Am. Title Co.*, 196 S.W.3d 876, 878 n.1 (Tex. App.—Houston [1st Dist.] 2006, no pet) (holding that an appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties).

Based upon the Department's allegation in its petition that C.L. is an alleged father, the admissions of C.L. and his counsel in open court, as well as Easley's statements in open court, C.L.'s signing of documents as Z.L.'s parent, and C.L.'s testimony about being Z.L.'s father during the trial regarding his other child, we conclude that clear and convincing evidence supported the trial court's implicit finding that C.L. is Z.L.'s parent.[2] *See* Tex. Fam. Code Ann. § 161.001(b); *In the*

---

[2]C.L. points out that the trial court's termination order identifies him as "Respondent Presumed Father" in its list of the parties' appearances. However, in the section of the order which terminated C.L.'s rights, the order simply identified C.L. as "Respondent Father[.]" The Department's original petition identified C.L. as Z.L.'s "alleged father[.]" With the exception of the stray "presumed father"

8

*Interest of J.L.*, 163 S.W.3d at 84; *Toliver*, 217 S.W.3d at 105; *Douglas*, 196 S.W.3d at 878 n.1.  Accordingly, we overrule issue one.

ISSUE TWO

In issue two, C.L. argues that the trial court violated his right to due process by not allowing him a reasonable opportunity to participate in the trial. The record reflects that C.L. did not raise this issue in the trial court. *See* Tex. R. App. P. 33.1(a); *In the Interest of K.A.F.,* 160 S.W.3d 923, 928 (Tex. 2005) (holding that "the rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error[]"). "Appellate review of potentially reversible error [that was] never presented to a trial court would undermine the Legislature's dual intent to ensure finality in these cases and expedite their resolution." *In the Interest of B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003).

Even if we were to construe C.L.'s second issue as a complaint regarding the denial of his motion for continuance, he would not prevail. We review the trial court's order denying a motion for continuance for abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). We will not reverse the trial court's

---

designation in the list of parties in the termination order, nothing else in the pleadings or evidence indicates that the trial court found C.L. to be a presumed father. Rather, the record indicates that the trial court found the Department's pleading that C.L. is Z.L.'s alleged father to be true.

decision unless the trial court acted unreasonably or arbitrarily "'without reference to any guiding rules and principles.'" *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). Rule 251 of the Texas Rules of Civil Procedure provides as follows, in pertinent part: "No application for a continuance shall . . . be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. A trial court is presumed to have correctly exercised its discretion when it denies a motion that does not comply with the requirements of Rule 251. *Villegas*, 711 S.W.2d at 626.

In this case, counsel made only an oral motion for continuance, so the record does not contain an affidavit supporting the motion. In addition, the record reflects that the trial judge heard and considered arguments regarding the length of time the case had been pending; C.L.'s counsel's statement that he had left a voicemail message for C.L. about the trial setting, but C.L. had not responded; the number of times the case had already been reset; Z.L.'s need for permanency; and a statement from Z.L.'s foster parent that C.L. said he did not intend to return to court for the trial. We conclude that the trial court did not act arbitrarily or unreasonably without reference to guiding rules or principles in denying C.L.'s oral motion for continuance. *See* Tex. R. Civ. P. 251; *Buller*, 806 S.W.2d at 226. For all these

10

reasons, we overrule issue two. Having overruled both of C.L.'s issues, we affirm the trial court's order terminating C.L.'s parental rights.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 2, 2020
Opinion Delivered December 10, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.