# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-03-00637-CV
---

**Nemol Joe Fox, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. FM200430, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Nemol Joe Fox appeals the termination of his parental rights to A.F. He contends that the evidence was not legally or factually sufficient to support the court's findings that (1) he engaged in conduct or knowingly placed A.F. with people who engaged in conduct that endangered A.F.'s physical or emotional well-being, (2) he failed to support A.F. in accordance with his ability for a period of one year ending within six months of the date the petition was filed, and (3) the termination of his parental rights was in A.F.'s best interests. We will affirm the trial court's decree of termination.

## BACKGROUND

In January 2002, the Texas Department of Protective and Regulatory Services (the "Department") filed a petition requesting relief including termination of the parent-child

relationships between appellant and three of his sons, including A.F. The Department alternatively sought appointment of a new managing conservator for the children. The Department sought the same relief regarding the parental relationship between the boys and their mother, Meshell Fox. At the time of the trial in April 2003, A.F. was 10 years old, while his brothers were 14 and 15 years old. Throughout the trial, appellant was incarcerated for a felony conviction for driving under the influence; he participated by telephone and through counsel in the courtroom.

After a trial to the bench, the court concluded that the appointment of either parent or their relatives as managing conservator of the older boys was not in the children's best interest; the court appointed the Department as the sole managing conservator of the older two children, and appointed the parents as possessory conservators.

The court severed the case regarding A.F. from the original cause. In the new cause, the court signed a decree terminating the parents' rights to A.F. The court noted that Meshell Fox filed a voluntary relinquishment of her parental rights to A.F. The court then found that appellant (1) engaged in conduct or knowingly placed A.F. with people who engaged in conduct that endangered A.F.'s physical or emotional well-being, and (2) failed to support A.F. in accordance with his ability for a period of one year ending within six months of the date the petition was filed; the court also found that the termination of his parental rights was in A.F.'s best interests.

Appellant filed a notice of appeal challenging the termination of his parental rights.[1]

_____

[1] The Department moves to dismiss this appeal because appellant filed the notice of appeal under the original cause number and because of other procedural missteps (*i.e.*, failing to file a copy of the notice with this Court and failing to notify the Department of the appeal). We must exercise jurisdiction when an appellant makes a bona fide attempt to appeal if no party is prejudiced, even if the notice of appeal for a severed cause of action is filed in the original cause. *See Lagoye v. Victoria Wood Condominium Ass'n*, 112 S.W.3d 777, 782 (Tex. App.—Houston [14th Dist.] 2003,

2

## DISCUSSION

Appellant challenges the sufficiency of the evidence for the three findings supporting the termination of his parental rights.

**Standard for termination of parental rights**

The family code sets out a two-pronged test for involuntary termination of the parent-child relationship. Tex. Fam. Code Ann. § 161.001 (West 2002) ("Family Code"). The trial court must find by clear and convincing evidence (1) that the parent engaged in one of the several grounds for termination, and (2) that termination is in the best interest of the child. *Id.*; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the proposition sought to be established. Family Code § 101.007 (West 2002). Proof of one prong does not relieve the petitioner from establishing the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

**Standard of Review**

The heightened burden of proof alters our appellate standards of review because our customary standards do not adequately protect the parents' constitutional interests. *In re J.F.C.*, 96

---

no pet.); *Tanner v. Karnavas*, 86 S.W.3d 737, 744 (Tex. App.—Dallas 2002, pet. denied); *see also Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997); *City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992). Finding that appellant made a bona fide attempt to appeal and that no party has shown harm from our consideration of the merits of this appeal, we deny the motion to dismiss.

S.W.3d 256, 264-65 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In conducting our legal sufficiency review in termination cases, we must review all the evidence in the light most favorable to the finding and the judgment to determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *J.F.C.*, 96 S.W.3d at 265-66. In other words, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* at 266. We must also disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding, as this could skew the analysis of whether there is clear and convincing evidence. *Id.* We must consider undisputed evidence even if it does not support the finding. *Id.* Following this review, if we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *C.H.*, 89 S.W.3d at 25. We must consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding—*e.g.*, whether the disputed evidence is incredible. *J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the incredible evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction in favor of the judgment, then the evidence is factually insufficient. *Id.*

4

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers and are reviewable for legal and factual sufficiency of the evidence by the same standards. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When a complete reporter's record is part of the record on appeal, as in the instant case, the court's findings of fact are not conclusive. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

**Failure to support A.F.**

The district court found that appellant failed to support A.F. in accordance with his ability for a period of one year ending within six months of the date the petition was filed. *See* Family Code § 161.001(1)(F). Appellant argues that no evidence supports that he failed to support A.F. or that he was able to support him while incarcerated.

Appellant's incarceration did not occur during the relevant period. Appellant asserts that he was incarcerated beginning in July 2002. The one-year period of nonsupport must begin no more than 18 months before the petition was filed. *Yepma v. Stephens*, 779 S.W.2d 511, 512 (Tex. App.—Austin 1989, no writ). The period of nonsupport in this case must have occurred between July 18, 2000 and January 18, 2002, the date on which the original petition was filed. Thus, appellant was incarcerated about six months after any relevant measuring period ended. Even if he were incarcerated during the relevant period, appellant testified that he made $40,000 during 2000 and $45,000 during 2001—amounts that impose a duty on him to provide support.

The testimony regarding whether appellant provided sufficient support during the relevant period was not consistent. Appellant testified that he sent as much as $600 to Meshell Fox

5

for child support four times during 2001 or 2002. He later testified that he sent $100 three or four times, and that he sent money around Christmas 2001. Appellant testified that he was not under any order to support the children and that he and Meshell agreed that he did not need to send money to her because he had supported the children by himself from the time she left (in 1995 or 1996) until she reclaimed possession of the children. Meshell testified that she did not recall agreeing that appellant did not need to pay child support, but acknowledged that she may have told him that she did not need his money to support the boys. She recalled getting $100 once from him during 2001 and 2002.

The record supports the judgment. Regardless of the existence of a court order, parents have a duty to support their children. *See* Family Code § 151.001(a)(3) (West Supp. 2004-05). A parent must support the child in accordance with his ability. *Id*. § 161.001(1)(F). The family code provides guidelines for child support based on income and number of children. *Id*. § 154.125 (West 2002). Based on the minimum income appellant reported for a relevant period ($40,000 in 2000), the Department calculates that, under the guidelines, appellant owed his children $9,543.17 in support annually; if he earned only minimum wage, the Department calculates that appellant owed $2,868 per year. *See id*. §§ 154.061, .125. The maximum support appellant claimed to have sent totals $2,800; other evidence indicates he sent as little as $100. Even if appellant sent all of the money he claimed to have paid during a one-year period, he was still short $6,743.17 of the amount of support due based on the minimum $40,000 income he reported earning; in fact, the maximum amount reported sent falls $68 short of his presumptive obligation as calculated by the Department even if he earned only minimum wage. Although appellant claimed without dispute that he

6

supported the children by himself throughout the late 1990s, the record contains no evidence that the amount of support he provided during that time offsets this deficit.

We conclude that, even accepting appellant's testimony as true, the evidence is clear and convincing that he failed to support A.F. in accordance with his ability. If the court accepted other testimony, the evidence of lack of support is even clearer and more convincing.

**Endangering A.F.**

The court found that appellant either engaged in conduct or knowingly placed A.F. in the custody of others who engaged in conduct that endangered A.F.'s physical or emotional well-being. Family Code § 161.001(1)(E). We look exclusively to appellant's actions, omissions, or failures to act. *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination based on this subsection must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" that endangered the child's physical and emotional well-being is required. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 534 (Tex. 1987); *D.M.*, 58 S.W.3d at 811. "Endanger" means to expose to loss or injury, to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). The endangering acts need not have been directed at the child, or have caused an actual injury or threat of injury to the child to constitute conduct that endangers the child's physical or emotional well-being. *Id.*

Appellant relies on both evidence and the lack of evidence to show that the evidence that he endangered A.F. is factually insufficient. He notes that there is no evidence that he ever physically abused the children; rather, Meshell testified that he did not. He also cites Meshell's

refusal to label his name-calling and other statements he made (some while drunk) that were upsetting to the children as emotional abuse. He concedes that he has been convicted and incarcerated for driving under the influence on more than one occasion and that he engaged in physical abuse of Meshell in the children's presence. He contends, however, that there is no evidence that he ever drove under the influence while the children were in his vehicle or near it. He also points to the absence of evidence that A.F. ever saw him abuse Meshell. (Many of the incidents of physical abuse discussed occurred before the parents separated, which occurred when A.F. was two years old or younger.) Appellant contends that, when he was incarcerated previously, he placed A.F. with appellant's sister, who did not endanger A.F. in any way. He also asserts that, although he knew about Meshell's history of drug use, he accepted her statement that she was clean and sober when he returned the boys to her care. Based on all of this information, the appellant argues that there is insufficient evidence to show that he knowingly placed A.F. with a person who endangered his physical or emotional well-being. *See* Family Code § 161.001(1)(E).

The Department notes the undisputed evidence that, during appellant's incarceration, appellant's sister cast the boys out onto the street. But this evidence does not show that appellant placed the children with his sister knowing the banishment would occur or was even a reasonable possibility.

Other evidence, however, supports the court's finding. Appellant left the children with an alcoholic girlfriend who physically abused the children to the point that the oldest brother defended his little brother from her. Although there is no evidence that appellant knew that the

8

girlfriend physically abused the children, the court reasonably could have determined that he knew she was an active alcoholic and that leaving the children with an alcoholic could be dangerous.

More damaging is the evidence that he sent the children to live with Meshell, despite knowing her history of drug abuse and knowing that she had relapsed within the previous week. Although appellant testified that he accepted Meshell's statements that she was abstaining again after the relapse, the court could reasonably conclude that such a move endangered A.F.

Although there is no direct testimony that A.F. was physically abused or that he witnessed physical abuse, there is testimony from which the court could have drawn either conclusion. There was testimony that appellant's alcoholic girlfriend would "get drunk and beat all three of the boys." There is evidence that, after the Foxes separated, appellant drove his car into the house where the children were, then beat Meshell with a bat or an axe-handle until Meshell's friend (the owner of the house) stabbed appellant; the beating was so severe that the children barely recognized Meshell at the hospital. Because the trial concerned the custody of three boys, the court could reasonably conclude that A.F. was one of "the children" who witnessed these events even though no one testified directly that A.F. saw these events. The court could also discount appellant's argument that A.F. could not be affected if he was less than two years old when he saw his father beat his mother to unrecognizability. There is testimony that appellant beat his girlfriend and, once, held her over the railing at an apartment building. These events provide factually sufficient evidence that appellant endangered A.F.'s emotional well-being or knowingly placed him with those who did.

9

**A. F.'s best interest**

There is a strong presumption that the best interest of a child is served by keeping custody in the natural parent. *In re D.T.*, 34 S.W.3d 625, 641 (Tex. App.—Fort Worth 2000, pet. denied). Some of the common factors that courts use to evaluate the best interests of a child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list of relevant considerations is not exhaustive; other factors may be considered when appropriate. *Id*. at 372; *Phillips v. Texas Dep't of Protective and Regulatory Servs.*, 25 S.W.3d 348, 355-56 (Tex. App.—Austin 2000, no pet.). Likewise, a fact finder is not required to consider all of the listed factors. *Phillips*, 25 S.W.3d at 356.

Appellant contends that the evidence is legally and factually insufficient to support the conclusion that termination is in A.F.'s best interest. He cites the strong bond among the brothers—acknowledged by many witnesses—that could not be guaranteed to be maintained after adoption. There was testimony that adoptive families might balk at a requirement that contact with the brothers continue, thus delaying adoption; witnesses testified that adoption was more important to A.F. than maintaining contact with his brothers. Appellant also cites the testimony by court-

10

appointed special advocate in favor of visitation between A.F. and appellant until A.F. is adopted. Appellant notes that the boys wanted to call him while they lived in different states. Appellant testified that he has been sober for two years and was continuing his treatment.

There is evidence that termination is in A.F.'s best interest in addition to the evidence discussed above regarding appellant's past endangerment of and failure to support the child. Appellant has been incarcerated for a significant portion of A.F.'s life because of convictions for driving under the influence. When not incarcerated, he has been drunk and abusive to women near A.F. Despite indicating a bond with his mother, A.F. has decided that he would rather be adopted by a stable family. A.F.'s therapist testified that A.F. never mentioned his father. There is evidence that he has done very well in his foster placement and is so eager to be adopted that he is seeking families to adopt him. There is evidence that A.F. would benefit from the permanency of adoption and that adoption would be better than eight years of the uncertainty of foster care. Although the Department could not guarantee an adoptive family that would maintain contact with the brothers, witnesses said they would strongly recommend that the Department try to find one that would maintain contact. The placement of the boys in separate foster homes because of the sometimes detrimental effect of their interaction—and their separate improvement in those placements—indicates that the brotherly bond should not stand in the way of termination of parental rights to A.F. so as to clear the way for his adoption.

## CONCLUSION

We conclude that legally and factually sufficient evidence support the district court's findings that appellant either endangered A.F.'s physical or emotional well-being or knowingly

11

placed him with people who did, and that he failed to support A.F. during the relevant pre-petition time frame. Legally and factually sufficient evidence also support the finding that termination of appellant's parental rights is in A.F.'s best interest. We affirm the decree of termination.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: August 26, 2004