COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-08-047-CV

 

 

IN THE INTEREST OF V.S.R.K., A CHILD                                                  

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction








Appellant Johnny D., the alleged biological
father of V.S.R.K., appeals the trial court=s order
terminating the parent-child relationship between himself and V.S.R.K.  Following a bench trial, the trial court
found that Appellant failed to assert paternity in accordance with family code
section 161.002; that Appellant knowingly placed or knowingly allowed V.S.R.K.
to remain in conditions that endangered her well-being; that Appellant engaged
in conduct or knowingly placed V.S.R.K. with persons who engaged in conduct
that endangered her well-being; and that Appellant constructively abandoned
V.S.R.K.  In four issues, Appellant
challenges the legal and factual sufficiency of the evidence supporting each of
these findings.  We affirm in part,
reverse and render in part, and remand for further proceedings. 

II.     The Children, Parents,
and Trial

Chessica K. is the biological mother of
ten-year-old V.S.R.K. and her two half-sisters, S.S. and F.L.S. (ages eight and
six, respectively).  Appellant is
V.S.R.K.=s
alleged biological father.  Tracy S. is
S.S. and F.L.S.=s biological father.  This appeal concerns only the relationship
between Appellant and V.S.R.K.

In August 2006, Chessica and her sister referred
the children to the Department of Family and Protective Services (Athe
Department@) because they both felt they
were incapable of caring for the children. 
The children are currently in a foster home.  The Department initiated termination
proceedings against Chessica, Appellant, and Tracy.  The case was tried to the bench on January
16, 2007.








A.     Chessica

Chessica did not attend the trial.  Bethany Hooser, a Department investigator,
testified that Chessica had referred the children to the Department because Ashe did
not feel she was capable of caring for the children. . . . She didn=t have a
place to live, she had some health concerns, she had some mental health issues,
some past drug issues.  Finances were a
concern for her.@ 
Jeannette Leong, a Department specialist, testified that Chessica=s
contacts with the Department concerning the children were infrequent and that
the content of her communications with the Department was that she desired to
relinquish her rights to the three children. 
In its order, the trial court found that Chessica had constructively
abandoned the three children and that termination was in their best interests. 

B.     Tracy









Tracy testified at trial.  He stated that although he is not V.S.R.K.=s
biological father, she Astarted calling me Daddy within
around 2000 and she=s called me Daddy ever since.@  He testified that he had previously been
incarcerated for a probation violation relating to four charges of battery to a
household member.  Tracy also said that
he had two prior convictions for possession of marihuana.  He stated that he had been fired from his
last job because drugs were found in his work truck.  Tracy said that he currently lived in his
truck.

Hooser testified that there were concerns over
placing the three children with Tracy because Athe
children had previously lived with [Tracy], and there were concerns that he had
been physically abusive and that he had used drugs and was not able to provide
what would be considered a safe home for the children.@  The record indicates that there were also
allegations Tracy had sexually abused S.S. 
Leong testified that Tracy had been in and out of drug treatment for
methamphetamines, that he was unemployed, and that he did not have a place to
live.  After the majority of testimony
concerning Tracy concluded, Tracy submitted affidavits relinquishing his
parental rights to S.S. and F.L.S.  The
trial court accepted the affidavits. 

C.     Appellant








Appellant is incarcerated and is serving an
eight-year sentence for evading arrest. 
The Department alleged that Appellant is V.S.R.K.=s
biological father.  Appellant filed a
general denial and a request for appointment of counsel, in which he stated, AI am the
parent of the child named above [V.S.R.K.].@  The Department developed a service plan for
Appellant, calling for Appellant to complete a number of services Aupon his
release.@  V.S.R.K.=s ad
litem requested DNA testing to determine whether Appellant was V.S.R.K.=s
father, but the test results were not available at the time of trial.[2]

The reporter=s record
contains surprisingly little information about Appellant.  Wendy Hackler, Appellant=s
appointed attorney, informed the trial judge that Appellant would not attend
the trial because he was incarcerated. 
She also stated that she had filed a motion for continuance and a motion
for severance because Appellant had not received DNA results showing whether he
was V.S.R.K.=s biological father.  The trial court denied the motion.  When asked about Appellant, Tracy testified, AI=ve never
seen him, never met him.@ 
Hooser=s testimony regarding Appellant
was that Chessica had informed her that Appellant was V.S.R.K.=s
biological father and that he was incarcerated. 
Shana Hazzard, the foster home director for the home where the children
currently live, testified that she had not had any contact with Appellant.








The most extensive testimony concerning Appellant
came from Leong.  Leong testified that
she had spoken with Appellant=s
brother about placing the children with him, but he was willing to take only
V.S.R.K., and the Department felt it was important to keep the three children
together.  She said that she had
corresponded with Appellant via letters. 
She testified that she had set up a service plan for Appellant, that he
had been incarcerated the entire time the children have been with the
Department, and that she had kept him apprised of the case.  She stated that Appellant had Anot sent
me any certificates or any notification of completion of services@
regarding the service plan and that Appellant had not seen V.S.R.K. Aface-to-face@ during
the time the children had been referred to the Department and trial.  She did say, however, that the Afacility
he was in . . . would not allow a conference call with the Child
Advocate and myself and [Appellant].@  When asked whether he could provide a safe
place for V.S.R.K., she replied, AI have
no knowledge of what he can provide.@  She also said that she was unaware of his
release date.  She also testified that Appellant
should have rights to V.S.R.K., but she did not elaborate.  She stated that V.S.R.K. referred to Tracy as
her dad, not Appellant.  She said that
she believed V.S.R.K. was aware of Appellant because AI think
. . . her mother has told her that [Appellant is] her biological
father.@

The Department offered exhibits showing that
Appellant has two convictions for evading arrest and is currently three years
into an eight-year sentence on the second conviction. 








D.     DNA
Testing

Leong testified that conversations with Appellant
concerning DNA testing had been Agoing on
for quite some time@ prior to trial.  She said that DNA testing had been ordered by
the court.  But when asked why Appellant
had not been tested previously and why the results were still not available,
she said,

Well, the DNA test for
[V.S.R.K.] occurred in November because I took her down for the test and she
was tested, and in my follow-ups with the liaison for the Attorney General=s office, evidently they
misunderstood where [Appellant] was, because they had sent me an e-mail saying
he was a no-show for his test, and I had it very clearly stated the location of
the prison facility that he=s at, and they immediately came back and said
yes, and that=s when they were
scheduling him for testing, because I took [V.S.R.K.] in November to be tested.


 

Leong also said that Appellant had been tested ten days prior to
trial, that the results were not yet available, and that the delay in getting
Appellant tested was Aa mistake.@  She testified that there had been a report
that Chessica=s brother might actually be
V.S.R.K.=s biological
father.  But Leong testified that
Chessica had named Appellant as V.S.R.K.=s
alleged biological father.

E.     The
Trial Court=s Decision








During the course of the trial, the trial court
took judicial notice of a ACertificate
of Paternity Registry@ that was on file with the court
indicating that a diligent search of the paternity registry had been made and
that no notice of intent to claim paternity had been located pertaining to
V.S.R.K.  In its order of termination,
the trial court found that Appellant is V.S.R.K.=s
alleged biological father and that he had failed to assert paternity.  As grounds for termination, the trial court
found that Appellant knowingly placed or knowingly allowed V.S.R.K. to remain
in conditions that endangered her physical and emotional well-being; engaged in
conduct or knowingly placed her with persons who engaged in conduct that
endangered her physical or emotional well-being; and constructively abandoned
her.  The trial court further found that
termination was in V.S.R.K.=s best
interest and terminated Appellant=s
rights.

III.     Discussion

A.     Admission
of Paternity

In his first issue, Appellant argues that the
trial court erred by finding that he failed to admit paternity under chapter
160 of the Texas Family Code.  We agree.[3]








Section 161.002(b)(1) of the family code provides
that A[t]he
rights of an alleged father may be terminated if . . . after being
served with citation, he does not respond by timely filing an admission of
paternity or a counterclaim for paternity under Chapter 160.@  Tex. Fam. Code Ann. ' 161.002(b)(1)
(Vernon 2008).  Subsection 161.002(b)(1)
allows the Department to summarily terminate the rights of an alleged
biological father who does not assert his paternity.  Phillips v. Tex. Dep=t of
Protective & Regulatory Servs., 25 S.W.3d 348, 357 (Tex. App.CAustin
2000, no pet.).  However, if the alleged
father files an admission of paternity or otherwise claims paternity, then the
alleged father is able to stave off summary termination of his rights, and the
Department must instead meet the high burden of proof found in section
161.001.  Tex. Fam. Code Ann. ' 161.002(a);
Phillips, 25 S.W.3d at 357.

This court has held that there are no formalities
that must be observed for an admission of paternity to be effective.  In re K.W., 138 S.W.3d 420, 430 (Tex.
App.CFort
Worth 2004, pet. denied); see also Toliver v. Tex. Dep=t of
Family & Protective Servs., 217 S.W.3d 85, 105 (Tex. App.CHouston
[1st Dist.] 2006, no pet.); Estes v. Dallas County Child Welfare Unit of
Tex. Dep=t of Human Servs., 773
S.W.2d 800, 802 (Tex. App.CDallas
1989, writ denied); In re D.D.S., No. 02‑05‑00313‑CV,
2006 WL 2309813, at *2 (Tex. App.CFort
Worth Aug. 10, 2006, no pet.) (mem. op.).








In K.W., the alleged father desired to
prove his paternity, and this court held that letters written to the trial
court stating he was the child=s father
alone were sufficient to constitute an admission of paternity under this
section.  138 S.W.3d at 430.

Similarly, in Estes, which was decided
under a former but substantively similar statute, the State filed a petition to
terminate the parental rights of a father who was in prison.  773 S.W.2d at 801.  Two weeks before the final termination
hearing, the father filed a pro se answer, alleging that he was an indigent
parent and requesting the appointment of an attorney.  Id. 
The court stated that A[t]here
is no provision in the Texas Family Code that specifies any particular form or
language required for an admission of paternity.@  Id. 
The court noted that Athe
natural rights existing between a parent and child are of constitutional
dimensions@ and that Ainvoluntary
termination proceedings must be strictly scrutinized.@  Id. at 802 (citing Holick v. Smith,
685 S.W.2d 18, 20 (Tex. 1985)).  The
court, applying strict scrutiny, stated that the father=s answer
constituted an admission of paternity and that the answer Awas
timely filed since it was filed prior to the final hearing in the suit for
termination.@ 
Id.








The court in Toliver, also applying strict
scrutiny to section 161.002, held that despite the alleged father having failed
to file any documents with the trial court, his appearing at trial before his
rights were terminated and admitting that he was in fact the child=s
father, triggered his right to require the Department to prove that he engaged
in one of the types of conduct listed in section 161.001(1).  217 S.W.3d at 105.

In this case, Appellant has filed a general
denial, claimed indigence, and filled out a form requesting counsel stating
that he is the father of V.S.R.K.  He has
also asked to be tested to determine whether he is V.S.R.K.=s
biological father.

The Department argues that Ain his
pleadings and argument at trial, Appellant repeatedly asserted he questioned@ his
paternity.  Thus, the Department argues,
he could not have admitted paternity for purposes of 161.002.  We are not persuaded by this argument.  Appellant filed a motion for continuance
asking the trial court to await the results of DNA testing to establish his
paternity.  The record indicates that the
DNA results had been delayed due to Amistake[s]@ by the
State, not Appellant.  More importantly,
the record indicates that Appellant admitted paternity in manners that even the
Department concedes this court has recognized as admissions of paternity under
161.002.








Because we are required to strictly construe
involuntary termination statutes in favor of the parent, we conclude that
Appellant admitted his paternity of V.S.R.K. for purposes of section
161.002(b)(1).  See In re E.M.N.,
221 S.W.3d 815, 820 (Tex. App.CFort
Worth 2007, no pet.); see also Holick, 685 S.W.2d at 18, 20B21.  Therefore, the Department was not entitled to
summary termination of Appellant=s
parental rights under family code section 161.002(b)(1), and we will review the
trial court=s findings on the grounds for
termination.

B.     Grounds
For Termination

1.     Standard
of Review

A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  In a termination case, the State
seeks not just to limit parental rights but to end them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code. Ann. ' 161.206(b)
(Vernon 2008); Holick, 685 S.W.2d at 20. 
We strictly scrutinize termination proceedings and strictly construe
involuntary termination statutes in favor of the parent.  Holick, 685 S.W.2d at 20B21; E.M.N.,
221 S.W.3d at 820.








In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code. Ann. ' 161.001
(Vernon 2008); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic
remedy and is of such weight and gravity that due process requires the
petitioner to justify termination by clear and convincing evidence.  Tex. Fam. Code. Ann. '' 161.001,
161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.  In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re C.S., 208 S.W.3d 77,
83 (Tex. App.CFort Worth 2006, pet.
denied).  It is defined as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@ 
Tex. Fam. Code Ann. ' 101.007
(Vernon 2002).








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  Id.

We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.
 But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the factfinder=s province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.

If we determine that no reasonable factfinder
could form a firm belief or conviction that the grounds for termination were
proven, then the evidence is legally insufficient, and we must generally render
judgment for the parent.  J.F.C.,
96 S.W.3d at 266; see Tex. R. App. P. 43.3.








In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provision of section
161.001(1) and that the termination of the parent=s
parental rights would be in the best interest of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
H.R.M., 209 S.W.3d at 108. 
If we reverse on factual sufficiency grounds, then we must detail in our
opinion why we have concluded that a reasonable factfinder could not have
credited disputed evidence in favor of its finding.  J.F.C., 96 S.W.3d at 266B67.

2.     Endangering
Conduct

In his second issue, Appellant argues that the
evidence is legally and factually insufficient to support the trial court=s
finding that he engaged in conduct or knowingly placed V.S.R.K. with persons
who engaged in conduct that endangered her physical or emotional well‑being.
 See Tex. Fam. Code Ann. ' 161.001(1)(E).  We agree.








Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s well‑being
was the direct result of the parent=s
conduct, including acts, omissions, or failures to act.  In re R.D., 955 S.W.2d 364, 368 (Tex.
App.CSan
Antonio 1997, pet. denied); Dupree v. Tex. Dep=t of
Protective & Regulatory Servs., 907 S.W.2d 81, 83B84 (Tex.
App.CDallas
1995, no writ).  Termination under
section 161.001(1)(E) must be based on more than a single act or omission; a
voluntary, deliberate, and conscious course of conduct by the parent is
required. Tex. Fam. Code Ann. ' 161.001(1)(E);
In re D.T., 34 S.W.3d 625, 634 (Tex. App.CFort
Worth 2000, pet. denied); In re K.M.M., 993 S.W.2d 225, 228 (Tex. App.CEastland
1999, no pet.).

Endangerment, as that term is used in the
statute, means to expose to loss or injury, to jeopardize.  Boyd, 727 S.W.2d at 533; see also
In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).  Although endangerment requires more than a
mere threat of metaphysical injury or the possible ill effects of a less‑than‑ideal
family environment, it is not necessary that the parent=s conduct
be directed at the child or that the child actually suffer injury.  Boyd, 727 S.W.2d at 533.  The specific danger to the child=s well‑being
may be inferred from parental misconduct standing alone.  Id.; In re R.W., 129 S.W.3d
732, 738 (Tex. App.CFort Worth 2004, pet. denied).








Nonetheless, the evidence of endangerment must be
the Adirect
result of the parent=s conduct.@  In re D.T., 34 S.W.3d at 634.  The fact of Aimprisonment
will not, standing alone, constitute engaging in conduct which endangers the
emotional or physical well‑being of a child.@  Boyd, 727 S.W.2d at 533 (but noting
that Aimprisonment
is certainly a factor to be considered by the trial court on the issue of
endangerment@).  Furthermore, to determine whether termination
is necessary, courts look to parental conduct engaged in both before and after
the child=s birth.  In re D.M., 58 S.W.3d 801, 812 (Tex. App.CFort
Worth 2001, no pet.).

In this case, there is no evidence that Appellant
engaged in conduct or knowingly placed V.S.R.K. with persons who engaged in
conduct that endangered her physical or emotional well‑being.  In its brief to this court, the Department
points out that Appellant has two prior convictions for evading arrestCone for
which he is now incarcerated.  The
Department also points out that Appellant has not seen V.S.R.K. since she was
ten months old.  But then the Department
focuses the majority of its analysis on Chessica=s and
Tracy=s
endangering conduct.  The Department
fails to show how the endangerment was the Adirect
result of@ Appellant=s
conduct or that Appellant knew that Chessica and Tracy engaged in endangering
conduct.  See In re D.T., 34
S.W.3d at 634.








We conclude that the trial court could not have
reasonably formed a firm belief or conviction that AppellantCas a
direct result of his actionsCengaged
in a voluntary, deliberate, and conscious course of conduct or knowingly placed
V.S.R.K. with persons who engaged in conduct that endangered her physical or
emotional well‑being.  See
Tex. Fam. Code Ann. ' 161.001(1)(E); In re
D.T., 34 S.W.3d at 634.  We sustain
Appellant=s second issue.

3.     Endangering Environment

In his third issue, Appellant contends that the
evidence presented at trial was legally and factually insufficient to support
the trial court=s endangering-environment
finding.  See Tex. Fam. Code Ann. ' 161.001(1)(D).  We agree.








The trial court may order termination of the
parent‑child relationship if it finds by clear and convincing evidence
that the parent has knowingly placed or knowingly allowed the child to remain
in conditions or surroundings that endanger the physical or emotional well‑being
of the child.  Id.  Under subsection (D), it is necessary to
examine evidence relating to the environment of the child to determine if the
environment was the source of endangerment to the child=s
physical or emotional well-being.  In
re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.).  The phrase Aconditions
or surroundings@ refers only to the
acceptability of the child=s living
conditions and does not concern the parent=s
conduct toward the child.  In re
D.J.J., 178 S.W.3d 424, 429 (Tex. App.CFort
Worth 2005, no pet.).  The Department
must show that the child=s living conditions pose a real
threat of injury or harm.  In re
C.L.C., 119 S.W.3d 382, 392 (Tex. App.CTyler
2003, no pet.).  Although the parent need
not have certain knowledge that an actual injury is occurring, there must be
evidence that the parent was at least aware of the potential for danger to the
child and disregarded that risk.  Id.

In this case, there is simply no evidence that
Appellant knowingly placed or knowingly allowed V.S.R.K. to
remain in conditions or surroundings that endangered her physical or emotional
well-being.  There is no evidence that
Appellant was aware of a potential for danger to V.S.R.K. and disregarded that
risk.  There is some evidence that Chessica
and Tracy=s home was a dangerous
environment, but the record is devoid of evidence tending to show that
Appellant knew anything about their home or its conditions.  In the absence of endangering-environment
evidence, the Department once again falls back on the fact of Appellant=s
incarceration, but incarceration alone is insufficient to support termination
under subsection (D).  See In re
S.M.L., 171 S.W.3d 472, 478B79 (Tex.
App.CHouston
[14th Dist.] 2005, no pet.).








We hold that the trial court could not have
reasonably formed a firm belief or conviction that Appellant knowingly placed
or knowingly allowed V.S.R.K. to remain in conditions or surroundings that
endangered her physical or emotional well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(D);
S.M.L., 171 S.W.3d at 478.  We
sustain Appellant=s third point.

4.     Constructive Abandonment

In his fourth issue, Appellant argues that the
evidence is legally and factually insufficient to support the trial court=s
finding that he constructively abandoned V.S.R.K.  See Tex. Fam. Code Ann. ' 161.001(1)(N).  We agree.

The elements of constructive abandonment are (1)
the child has been in the permanent or temporary managing conservatorship of
the Department for not less than six months, (2) the Department has made
reasonable efforts to return the child to the parent, (3) the parent has not
regularly visited or maintained significant contact with the child, and (4) the
parent has demonstrated an inability to provide the child with a safe
environment.  Id.  If there is no evidence of one or more of
these elements, then the finding of constructive abandonment fails.  See id.  The first element is not disputed; therefore,
we will focus on the remaining three elements of constructive abandonment.








Returning a child to a parent, under
section161.001(1)(N), does not necessarily mean that the child has to be
physically delivered to the individual.  See
In re D.S.A., 113 S.W.3d 567, 573 (Tex. App.CAmarillo
2003, no pet.).  AReasonable
efforts@ to
reunite parent and child can be satisfied through the preparation and
administration of service plans.  See
id. at 570B72; In re K.M.B., 91
S.W.3d 18, 25 (Tex. App.CFort Worth 2002, no pet.).

In this case, Leong testified that she had set up
a service plan for Appellant but also testified that Appellant had not sent any
certificates or any notification of completion of services.  Leong did not elaborate on the details of the
service plan and what was entailed. 
Leong did state, however, that the Afacility
[Appellant] was in . . . would not allow a conference call@ between
her and Appellant.  Appellant=s
service plan required him to complete services but not until his release from
prison.  There is nothing in the record
to indicate that Appellant failed to cooperate with the Department.  In fact, there is evidence that the
Department=s attempts to communicate with
Appellant were thwarted by the facility where he was incarcerated and that
Appellant=s attempts to determine his
paternity where thwarted by mistakes by the Department.  While there is no evidence in the record that
Appellant made any attempts to visit V.S.R.K., or to arrange visitation, there
is also no evidence that he failed to make any such attempts.  We hold that no reasonable factfinder could
form a firm belief or conviction that the Department has made reasonable
efforts to return V.S.R.K. to Appellant. 
See J.F.C., 96 S.W.3d at 265B66.








There is also no evidence to establish the third
element of constructive abandonment.  To
the contrary, there is evidence in this case that Appellant sent letters to the
caseworker concerning V.S.R.K. and that he has corresponded with both the
Department and the Child Advocate.  There
is also evidence in the record that the Department=s
attempts to communicate fully with Appellant were thwarted by the facility
where he is incarcerated.  The record
does not support the trial court=s
finding that Appellant did not attempt to visit regularly or maintain
significant contact with V.S.R.K.  What
the evidence in the record supports is that Appellant is incarcerated.  We reiterate that incarceration, alone, will
not support a finding of constructive abandonment.  See K.W., 138 S.W.3d at 432.

Turning to the last element, nothing in the
record indicates that Appellant has demonstrated an inability to provide
V.S.R.K. with a safe environment.  In fact,
when questioned about Appellant=s
ability to provide V.S.R.K. with a safe environment, Leong testified, AI have
no knowledge of what [Appellant] can provide.@  Construing the evidence in the light most
favorable to the trial court=s
judgment, we hold there is no evidence from which a factfinder could reasonably
form a firm belief or conviction that Appellant constructively abandoned
V.S.R.K. while she was in the care of the Department.  See In re K.W., 138 S.W.3d at
432.  We sustain Appellant=s fourth
issue.








IV.    Conclusion

Having sustained each of Appellant=s
issues, we reverse the portion of the trial court=s order
that terminates Appellant=s parental rights, render
judgment that the Department take nothing on its claim seeking to terminate
Appellant=s alleged parental rights, and
affirm the remainder of the trial court=s order.[4]  We remand this case to the trial court for
further proceedings in light of the results of Appellant=s DNA
paternity test and, if appropriate, consistent with the establishment of the
parent-child relationship between Appellant and V.S.R.K.

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

CAYCE, C.J. concurs
without opinion.

 

DELIVERED:  March 19, 2009











[1]See Tex. R. App. P. 47.4.





[2]In Appellant=s brief, his counsel
states that he has been advised by the Department=s counsel that the DNA
test shows that Appellant is V.S.R.K.=s biological father.





[3]In its brief, the
Department represents that Appellant concedes in his brief that he did not make
an admission of paternity.  In fact,
Appellant merely conceded that he did not file an assertion of paternity with
the paternity registry.  The Department
also represents that Appellant Arefused@ to admit paternity, but as we discuss below,
this representation is not supported by the record.





[4]Appellant does not
challenge the portion of the trial court=s order appointing the Department as permanent
managing conservator of V.S.R.K.